IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KLAUS H. BURMEISTER AND        )    CIVIL 16-00402 LEK-KJM
ULRIKE BURMEISTER, AS          )
TRUSTEES OF THE BURMEISTER     )
FAMILY TRUST DATED             )
JANUARY 21, 1994,              )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
COUNTY OF KAUA`I, and DOES     )
1-50,                          )
                               )
          Defendants,          )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS**

On October 3, 2017, Defendant County of Kaua`i
("Defendant" or the "County") filed its Motion for Summary
Judgment on All Counts ("Motion"). [Dkt. no. 37.] Plaintiffs
Klaus H. Burmeister and Ulrike Burmeister, as Trustees of the
Burmeister Family Trust Dated January 21, 1994 ("Plaintiffs" or
("Trustees"), filed their memorandum in opposition on
November 20, 2017, and the County filed its reply on November 27,
2017. [Dkt. nos. 48, 51.] This matter came on for hearing on
December 11, 2017. On December 18, 2017, an entering order was
issued ruling on the Motion. [Dkt. no. 56.] The instant Order
supersedes that ruling. Defendant's Motion is hereby granted as
to Counts II, a portion of Count III, and Counts IV-XI; and

denied as to Count I and the portion of Count III based solely on the May 11, 2016 incident, for the reasons set forth below.

## BACKGROUND

Plaintiffs filed their Complaint on July 25, 2016, and assert diversity jurisdiction. [Dkt. no. 1 at ¶ 4.] Plaintiffs own certain real property, identified as Kaua`i Tax Map Key 5-8-8-34 ("Property"), which contains four single-family residences, used as Transient Vacation Rentals ("TVRs"). [Id. at ¶¶ 7-10.] Plaintiffs contend the County's subsequent enforcement actions against the Property were wrongful in light of an Enforcement and Settlement Agreement, executed on January 7, 2008 ("Settlement Agreement").[1] Plaintiffs assert eleven claims: breach of contract ("Count I"); breach of the implied covenant of good faith and fair dealing ("Count II"); trespass to land ("Count III"); nuisance ("Count IV"); harassment ("Count V"); equal protection ("Count VI"); tortious interference with contract ("Count VII"); interference with prospective economic advantage

_____

[1] The parties' filings and exhibits variously refer to the four TVRs as "residences," "structures," "buildings," and "cottages." This Order follows the Settlement Agreement, which uses the term "Residences." [Def.'s Separate & Concise Statement of Facts in Supp. of Motion ("Def.'s CSOF"), filed 11/1/17 (dkt. no. 43), Decl. of Les Milnes ("Milnes Decl."), Exh. 4 (Settlement Agreement); Pltfs.' Separate & Concise Statement of Facts in Supp. of Opp. to Def.'s Motion ("Pltfs.' CSOF"), Decl. of Klaus H. Burmeister ("K. Burmeister Decl."), Exh. 1 (Settlement Agreement).]

2

("Count VIII"); prima facie tort ("Count IX"); declaratory relief
("Count X"); injunctive relief ("Count XI").

Plaintiffs pray for:  a permanent injunction to enjoin
the County from continuing its allegedly wrongful conduct;
damages of at least $1,000,000; attorney's fees and costs; and
declaratory relief.  Specifically, Plaintiffs seek a declaration
that "(a) the Settlement Agreement is valid and enforceable;
(b) the Trustees are not required to obtain a building permit for
Residence 4; and (c) the Trustees are not required to remove
Residence 4 except as set forth in the Settlement Agreement."
[Complaint, Prayer at ¶ 4.]

The following facts are undisputed.  In 2002,
Plaintiffs purchased the Property, which contained a laundry
building and four residences, all operated as TVRs.  The four
residences were initially constructed in 1969.  The parties agree
the former owner remediated damage to Residence #4 in 1994, but
disagree as to the whether it was repaired or rebuilt.  [Def.'s
CSOF at ¶¶ 1-3 (rebuilt); Pltfs.' CSOF at ¶¶ 1-3 (repaired).]

On June 24, 2004, the County Planning Department
("Planning") first took enforcement action against Plaintiffs
when it issued a Zoning Compliance Notice ("ZCN" generally, and
specifically "June 2004 ZCN") for use of nonconforming structures
as dwelling units.  Compliance issues continued, and the County
continued to issue enforcement notices.  [Def.'s CSOF at ¶¶ 4-8;

3

Pltfs.' CSOF at ¶¶ 4-8.] On January 7, 2008 ("Effective Date"), the parties entered into the Settlement Agreement to "resolve all outstanding issues" regarding the Property. [Def.'s CSOF at ¶ 9; Pltfs.' CSOF at ¶ 9.]

The Settlement Agreement provides, *inter alia*, that: "Residence #4 shall be permitted to remain in its present location until the crest of the active beach berm fronting Residence #4 reaches any portion of Residence #4, at which time" the owners shall remove or relocate it at their expense; [Settlement Agreement, Terms of Agreement at ¶ 3;] "the Owners shall not be required to obtain any other permits from the County for all existing structures"; [id. at ¶ 6;] compliance with the Settlement Agreement "shall cure any and all outstanding building or zoning violations at this time as to any and all structures currently existing"; [id. at ¶ 7;] and in the event of a dispute, "the prevailing party shall be able to collect from the losing party" its "reasonable expenses and costs, including without limitation . . . reasonable attorney's fees and costs"; [id. at ¶ 10].

The parties agree the Settlement Agreement's resolution of the "outstanding issues" at least included whether: 1) the Property violated the maximum allowable density of three structures; 2) the laundry building violated side-yard setback requirements; 3) the fence and gate unlawfully block vehicle

4

access; and 4) whether Residence #4 violated shoreline setback requirements. [Def.'s CSOF at ¶ 10 (characterizing this list as complete); Pltfs.' CSOF at ¶ 10 (characterizing this list as incomplete).]

The parties agree resolution of the "outstanding issues" at least included: 1) issuance of zoning and Special Management Area ("SMA") permits for the fence and Residences #1, #2, and #3; 2) an agreement to alter the laundry building to provide proper setback; and 3) allowing Residence #4 to remain in its current location as a nonconforming structure, which must be removed later "at such time the crest of the active beach berm reaches" Residence #4, and until such time, agreeing Residence #4 will not be enlarged or reconfigured. [Def.'s CSOF at ¶ 11 (characterizing this list as complete); Pltfs.' CSOF at ¶ 11 (characterizing list as omitting a central aspect of the Settlement Agreement's resolution).]

The Federal Emergency Management Agency ("FEMA") monitors compliance with the National Flood Insurance Program ("NFIP"). In August 2009, FEMA conducted a floodplain tour of the Kaua`i North Shore. Afterwards, FEMA requested the County respond to apparent NFIP violations at twenty one properties, including Plaintiffs' Property. [Def.'s CSOF at ¶¶ 15-21; Pltfs.' CSOF at ¶¶ 15-21.]

On July 10, 2015, the Department of Public Works ("DPW") issued a Notice of Apparent Violation ("NOAV" generally, and specifically "July 2015 NOAV") relating to Residence #4's noncompliance with flood zone requirements, and demanded that Plaintiffs submit a plan for compliance. Plaintiffs did not submit a plan for compliance. [Def.'s CSOF at ¶¶ 21-22; Pltfs.' CSOF at ¶¶ 21-22.]

On June 21, 2016, Planning issued an SMA Notice of Violation ("NOV" generally, and specifically "June 2016 NOV"), and withheld renewal of the annual TVR permit for Residence #4. The June 2016 NOV stated that it was issued because "Structure #4 has yet to comply with DPW, Building or DPW, Flood Compliance requirements as required in Building Permit Application BP #06-0783." [Milnes Decl., Exh. 9 (June 2016 NOV) at 1.] The June 2016 NOV further stated:

> **Remedial action requires the applicant to either complete the building permit process or remove the structure.** Further failure to engage and complete the building permit process gives the Director cause to withhold renewal of the issued TVNC certificate for this structure.
>
> . . . **you are herein levied a fine of $5,000.00 for the above noted SMA violation(s).** Should the required remedial actions not be initiated within 60 days from the date of this notice, an additional fine of $1,000.00 for each day in which such violation persists shall be levied.

[Id. at 2 (emphases in original).]

On July 18, 2016, Planning issued a letter requiring Plaintiffs cease and desist TVR operations in Residence #4. Plaintiffs have not ceased TVR operations in Residence #4. On July 27, 2016, Planning issued a letter rescinding the June 2016 NOV ("7/27/16 Letter"). [Def.'s CSOF at ¶¶ 25-28; Pltfs.' CSOF at ¶¶ 25-28.] The 7/26/16 Letter further: stated Planning was withholding the TVR renewal application for Residence #4 because DPW's July 2015 NOAV "relative to the floodplain management issues" remained unresolved; warned any TVR use of Residence #4 after August 1, 2016, may result in fines up to $10,000 per day; and advised, "Any claims DPW's violation notice contradicts [Planning's] Settlement Agreement with you should be taken up with them. . . . You are responsible for providing us evidence of [] clearance [from DPW]." [Milnes Decl., Exh. 10 (7/26/16 Letter).]

On August 3, 2016, the County received a copy of the Complaint. In September 2016, the County resumed negotiations with FEMA regarding Residence #4. [Def.'s CSOF at ¶¶ 29-30; Pltfs.' CSOF at ¶¶ 29-30.] On September 23, 2016, DPW issued a letter to FEMA ("9/23/16 Letter"), which explained the County Attorney's conclusion that the Settlement Agreement resolved the apparent NFIP violation by "ensur[ing] that Building #4 may not be improved and will ultimately be removed from its current location." [Def.'s CSOF, Decl. Stanford Iwamoto ("Iwamoto

7

Decl."), Exh. 18 (9/23/16 Letter) at 2.] DPW requested FEMA

determine whether it agrees the Settlement Agreement "fulfill[s]

the intent and purpose of the [NFIP] by ensuring compliance with

NFIP standards to the 'maximum extent possible.'" [Id.]

On October 7, 2016, FEMA issued a letter to DPW

("10/7/16 Letter") stating the Settlement Agreement was "one way

to remedy a[n NFIP] violation to the maximum extent possible" and

therefore "[n]o further action" was required as to Plaintiffs'

Property. [Iwamoto Decl, Exh. 19 (10/7/16 Letter) at 1.] On

October 13, 2016, DPW rescinded the July 2015 NOAV. Also on

October 13, 2016, Planning renewed Plaintiffs' TVR certificate

for Residence #4. As of October 2016, no County enforcement

actions were pending with regard to Plaintiffs' Property.

[Def.'s CSOF at ¶¶ 31-34; Pltfs.' CSOF at ¶¶ 31-34.]

**STANDARD**

This Court has stated:

> [A]s a general rule, the construction and
> legal effect to be given a contract is a question
> of law." Found. Int'l, Inc. v. E.T. Ige Const.,
> Inc., 78 P.3d 23, 30–31 (Haw. 2003). The parol
> evidence rule only applies if an agreement is
> integrated — if so, "[a]bsent an ambiguity, [the]
> contract terms should be interpreted according to
> their plain, ordinary, and accepted sense in
> common speech." Id., at 31 (citation and
> quotations omitted). Thus, "a prerequisite to the
> application of the [parol evidence rule] is that
> there must first be a finding by the trial court
> that the writing was intended to be the final and,
> therefore, integrated expression of the parties'
> agreement." Matter of O.W. Ltd. P'ship, 668 P.2d

56, 60 (Haw. App. 1983) (citing Restatement (Second) of Contracts §§ 209 comment c, 210 comment b, 213 comment b (1981)) (additional citations omitted).  The court may use all available evidence in determining whether a contract is integrated.  <u>Seascape Development v. Fairway Capital</u>, 737 F. Supp. 2d 1207, 1215 (D. Haw. 2010).

"A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning."  <u>Airgo, Inc. v. Horizon Cargo Transp., Inc.</u>, 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983) (citing <u>Hennigan v. Chargers Football Co.</u>, 431 F.2d 308, 314 (5th Cir. 19[7]0)).  "The court should look no further than the four corners of the document to determine whether an ambiguity exists."  <u>Williams v. Aona</u>, 210 P.3d 501, 515 (Haw. 2009) (quoting <u>United Pub. Workers, AFSCME, Local 646, AFL–CIO v. Dawson Int'l, Inc.</u>, 149 P.3d 495, 508 (Haw. 2006)).  "'[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.'"  <u>Found. Int'l, Inc.</u>, 78 P.3d at 33 (citing <u>State Farm Mut. Auto. Ins. Co. v. Fermahin</u>, 836 P.2d 1074, 1077 (Haw. 1992); <u>Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court</u>, 713 P.2d 427, 431 (Haw. 1986)). . . .  Therefore, "courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous."  <u>United Pub. Workers</u>, 149 P.3d at 508 (quoting <u>State Farm Fire and Cas. Co. v. Pac. Rent–All, Inc.</u>, 978 P.2d 753, 762 (Haw. 1999)). . . .

<u>Carson v. Kanazawa</u>, CIVIL 14-00544 LEK-KSC, CIVIL 16-00053 LEK-KSC, 2017 WL 3444764, at *12 (D. Hawai`i Apr. 30, 2017) (citation omitted) (emphases omitted).

## DISCUSSION

### I.    Count I - Breach of Contract

#### A.    Breach of the Settlement Agreement

Plaintiffs allege the County breached the Settlement Agreement by, *inter alia*:  "ordering the Trustees to obtain a building permit for, or remove, Residence 4; ordering the Trustees to pay a fine for 'failure to complete the building permit process;' withholding approval of the [TVR] Renewal Application; and threatening criminal prosecution."  [Complaint at ¶ 43.]

The County argues DPW's July 2015 NOAV, Planning's June 2016 NOV, and Planning's 7/26/16 Letter (collectively "Enforcement Notices") were not contemplated by the parties and are outside the scope of the Settlement Agreement.  The Enforcement Notices all relate to Residence #4's compliance with flood zone standards, but before the Effective Date, the County had not asserted Plaintiffs violated flood zone standards.  The County argues "compliance with federally mandated flood zone building standards" was outside the contemplation of the parties because, "at the time of the Agreement, the parties believed that Building #4 was constructed prior to 1980, and therefore, was not required to comply with the standards."  [Mem. in Supp. of Motion at 15.]  The County further argues that, because the County had

not yet enacted an ordinance addressing TVRs, issues relating to the renewal of Plaintiffs' TVR certificate were outside the contemplation of the parties. Therefore, the County argues, enforcement actions relating to flood zone standards and non-renewal of the TVR certificate did not breach the Settlement Agreement.

The Court concludes the Settlement Agreement is ambiguous. Its provision exempting Plaintiffs from "obtain[ing] any other permits from the County," [Settlement Agreement at ¶ 6,] is contradicted by Plaintiffs' conduct in applying for TVR licenses. Under the Settlement Agreement, Plaintiffs are granted some relief from having to "obtain any other permits from the County," but which "permits" and "outstanding issues" the parties intended the Settlement Agreement to reach cannot be determined from within its four corners. [Id. at ¶¶ 6-7.] Resort to parol evidence is therefore appropriate to determine the construction the parties intended.

The parties advance two different interpretations of the scope of the Settlement Agreement, both of which are permissible constructions of the agreement's ambiguous text. Under the County's favored construction, the permitting and code violations reached are only those which had been explicitly discussed, such as in negotiations or in prior enforcement notices. Under Plaintiffs' favored construction, the permitting

11

and code violations reached include all possible violations given the law and facts accessible to the County during the years in which the parties negotiated the Settlement Agreement.

In reviewing the Motion, this Court must view the record in the light most favorable to Plaintiffs.  See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) ("We review a grant of summary judgment de novo and must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact . . . ." (citations and quotation marks omitted)).  Plaintiffs state that, through counsel, they negotiated with the County for over three years, and one of the purposes of the Settlement Agreement was "to avoid future potential problems that could arise under prospective TVR restrictions."  [K. Burmeister Decl. at ¶ 21.]  Further, one of the reasons for the Settlement Agreement was that the County's permitting files were destroyed after Hurricane Iniki, which prevented Plaintiffs from proving the Residences were constructed at times qualifying them to be grandfathered under applicable county ordinances.  [Id. at 15.]

The County's contention that the parties could not have contemplated the not-yet-enacted TVR ordinance is disputed.  Plaintiffs contend "prospective TVR restrictions" were contemplated.  [Id. at ¶ 21.]  Plaintiffs assert compliance with, not exemption from, the TVR ordinance; they argue the County used

wrongful Enforcement Notices to deny their TVR certificates and threaten fines of up to $10,000 per day.

The Court finds there is a genuine issue of material fact as to whether the Settlement Agreement resolved the issues giving rise to the Enforcement Notices, and concludes the County is not entitled to judgment as a matter of law on the basis that its conduct did not breach the Settlement Agreement. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

**B.** **Validity and Enforceability of the Settlement Agreement**

In the instant Motion, the County had argued the Settlement Agreement was based on a mutual mistake regarding when Residence #4 was constructed. The County has since waived that argument. [Def.'s Mem. in Opp. to Pltfs.' Motion for Partial Summary Judgment on Counts I, II, X and XI [Dkt. #42], filed 3/27/18 (dkt. no. 83) at 20.] The County presents other defenses to the enforcement of the Settlement Agreement, but none is availing.

The County repeatedly argues this case involves "federally mandated [flood zone] building standards." [Mem. in Supp. of Motion. at 15, 17, 30.] It does not. Although this case relates to the County's effort to come into compliance with

13

the voluntary standards of the National Flood Insurance Program

("NFIP"), which is administered by the United States Federal

Emergency Management Agency ("FEMA"), the Enforcement Notices

assert Plaintiffs violated the Kaua`i County Code ("KCC"), not

any federal law or regulation.  [July 2015 NOAV at 1; June 2016

NOV at 2; 7/27/16 Letter.]

> Community participation in the NFIP is voluntary,
> and FEMA does not have any direct involvement in
> the administration of local floodplain management
> ordinances.  However, communities must adopt
> regulations consistent with FEMA's minimum
> eligibility criteria in order to be enrolled in
> the NFIP.  42 U.S.C. § 4012(c)(2); cf. 42 U.S.C. §
> 4022(a)(1) (prohibiting federal flood insurance to
> communities that have not complied with the
> criteria).

Nat'l Wildlife Fed'n v. Fed. Emergency Mgmt. Agency, 345 F. Supp.

2d 1151, 1156 (W.D. Wash. 2004) (some citations omitted).

On August 28, 2014 FEMA issued DPW a letter consistent

with the principles of voluntary participation identified in

National Wildlife Federation.  [Pltfs.' CSOF, Decl. of Counsel

("McAneeley Decl."), Exh. 12 ("8/28/14 Letter").[2]]  The 8/28/14

Letter followed up on FEMA's August 2009 North Shore floodplain

tour, and explained that until "all outstanding compliance issues

[are] resolved to the maximum extent possible [] the County risks

losing its standing in the [NFIP]," and Kaua`i will remain

ineligible for the Community Rating System ("CRS") program,

---

[2] Plaintiffs' counsel is Lindsay N. McAneeley.

"which could save homeowners in Kauai at least $197,160 per year, every year, in flood insurance premiums." [Id. at 1.] As to Plaintiff's Property, FEMA was unsatisfied with the County's remediation plan, which according to FEMA, involved issuing notices of violation pursuant to the County's Special Management Area and floodplain regulations. [Id. at 5.] FEMA explained that it was "not concerned with" violations of County code requirements, but rather, with apparent NFIP violations," arising under the Code of Federal Regulations. [Id.] FEMA explained DPW

> must address [Residence] #4 which is a known NFIP
> violation as suggested in the County's notes on
> the online permit #6-783, which state "existing
> building is in violation of flood requirements."
> In its remedial action plan, the County must
> consider how to remedy violations to the maximum
> extent possible per NFIP regulations, not
> necessarily the County's flood prevention
> ordinance, which appears to be out of compliance
> with NFIP regulations regarding substantial
> improvement.

[Id.] The 8/28/14 Letter concluded by "recogniz[ing] the efforts that the County is expending to remedy these violations so they can remain in good standing with the NFIP and to qualify to enter the [CRS], a voluntary program which could save homeowners [substantial amounts] in flood insurance premiums." [Id. at 8.]

The County is not entitlement to summary judgment based on any federally mandated standards. First, there is a genuine dispute of material fact. According to Plaintiffs, following execution of the Settlement Agreement, they applied for

15

additional permits "[i]n reliance on the County's representation that this was a mere ministerial requirement," necessary to fulfill the Settlement Agreement's promise that permit approval "would be issued 'simultaneously with the execution of this Agreement.'" [K. Burmeister Decl. at ¶ 23.] Planning stated that its June 2016 NOV was "a continuation of an enforcement process that commenced in 2008." [7/27/16 Letter.] There is a genuine dispute as to whether that enforcement process breached promises made under the Settlement Agreement. To the extent the County's conduct caused FEMA to conclude Residence #4 was a known NFIP violation, the County is not entitled to summary judgment because of FEMA. Second, even if FEMA acted independently of such conduct, the apparent NFIP violation does not relate to any federal mandate.

Next, the County argues that, to the extent the Settlement Agreement prevents DPW from enforcing the flood zone, it conflicts with KCC § 15-1.2(d), which provides that flood zone requirements "shall take precedence over any less restrictive, conflicting laws, ordinances, and regulations."[3] Further, the County relies on Konno v. County of Hawai`i and argues that, to the extent the Settlement Agreement exempts Plaintiffs' Property from floodplain standards, it is void for authorizing unlawful

_____

[3] The Kaua`i County Code is accessible at https://qcode.us/codes/kauaicounty/

conduct or as contrary to public policy.  <u>See</u> 85 Hawai`i 61, 72,

937 P.2d 397, 408 (1997) (contract void for violating civil

service policies set forth by Hawai`i statutes and Constitution).

The Settlement Agreement does not violate any law or

public policy.  To the contrary, the law favors resolution

through compromise or settlement rather than by litigation.  <u>See</u>

<u>Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.</u>, 116

Hawai`i 277, 288, 172 P.3d 1021, 1032 (2007).  The County

identifies no law depriving DPW and Planning of enforcement

discretion so that issuance of the Enforcement Notices was

required.  Notably, the flood ordinance's enforcement section

contains permissive language.  <u>See</u> KCC § 15-1.9 ("The County may

commence a civil action [to enforce violations] in any manner

provided by law.").  Moreover, the flood ordinance expressly

provides for grandfathering certain nonconforming structures.

KCC § 15-1.8 (exemption depends on date of construction and

whether structure "is considered to be [a] substantial

improvement").  The County fails to show a negotiated settlement

to resolve whether a structure is grandfathered under the flood

ordinance and/or whether possible enforcement actions will be

undertaken is unlawful or contrary to public policy.[4]

---

[4] Plaintiffs also argue the Settlement Agreement is
enforceable, even if premised on unlawful conduct, under <u>Wilson</u>
<u>v. Kealakekua Ranch, Ltd.</u>, 57 Haw. 124, 129, 551 P.2d 5255, 528-
(continued...)

Next, the County argues the Settlement Agreement is void and unenforceable because, under the County Charter: all contracts must be signed by the mayor; Planning lacks authority to bind DPW; and the attorney's fees provision is void for creating a financial obligation outside the appropriations process. The County's contention that the Planning Director and Deputy County Attorney exceeded their actual authority is not reached; it is enough that they acted with apparent authority.[5] See Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1136 (D. Hawai`i 2012).

> Under Hawaii law, "[a]n agency relationship may be created through actual or apparent authority." See [State v.] Hoshijo ex rel. White, 102 Hawai'i [307,] 318, 76 P.3d [550,] 561 [(2003)] (quoting Cho Mark Oriental Food, Ltd. v. K & K Int'l, 73 Haw. 509, 515, 836 P.2d 1057, 1061 (1992)). To establish actual authority, there must be "a manifestation by the principal to the agent that the agent may act . . . , and may be created by express agreement or implied from the conduct of the parties or surrounding circumstances.'" Id. (quoting State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315, 325, 978 P.2d 753, 763 (1999)). In comparison, "[a]pparent authority arises when 'the principal

---

[4](...continued)
29 (1976). That argument is not reached.

[5] Although the issue of actual authority is not reached, the Court notes that, after the hearing on the instant Motion, the County has admitted that it has executed other agreements that contain attorney's fees provisions without the mayor's signature and without engaging in the appropriations process. [Def.'s Response to Pltfs.' First Request for Answers to Admissions, filed 4/2/18 (dkt. no. 84-4), at ¶¶ 18, 25.]

> does something or permits the agent to do
> something which reasonably leads another to
> believe that the agent had the authority he was
> purported to have.'" <u>Cho Mark Oriental Food,
> Ltd.</u>, 73 Haw. at 515, 836 P.2d at 1061 (quoting
> <u>Hawaiian Paradise Park Corp. v. Friendly Broad.
> Co.</u>, 414 F.2d 750, 756 (9th Cir.1969)).

<u>Id.</u>  Under the Charter of the County of Kaua`i ("County

Charter"), the County Attorney "shall represent the county in all

legal proceedings" and "perform all other services incident to

his office as may be required by law."[6]  County Charter §§ 8.04-

8.05.  The parties negotiated the Settlement Agreement for over

three years.  Plaintiffs' counterparties signed as, for "COUNTY

OF KAUAI; By: Ian K. Costa; Its: Planning Director" and "APPROVED

AS TO FORM AND LEGALITY; James K. Tagupa; Deputy County Attorney,

County of Kauai`i."  [Settlement Agreement at pgs. 10-11.]  Under

these circumstances, Plaintiffs were reasonable in believing that

Mr. Tagupa and Mr. Costa had authority to bind the County to the

Settlement Agreement.  <u>See</u> <u>Cho Mark Oriental Food</u>, 73 Haw. at

515, 836 P.2d at 1061.

Alternatively, even if Mr. Tagupa and Mr. Costa lacked

apparent authority, the County subsequently ratified the

Settlement Agreement.  <u>See</u> <u>Hawai`i Hous. Auth. v. Uyehara</u>, 77

Hawai`i 144, 150, 883 P.2d 65, 71 (1994) ("the unauthorized act

---

[6] The Charter of the County of Kaua`i, 2016 Codified
Version, is available at http://www.kauai.gov/Portals/0/Council/
Documents/KauaiCharterCodified2016(Final).pdf

of an agent, if ratified, is as binding upon the principal as an original express grant of authority." (citation and internal quotation marks omitted)). On August 6, 2013, FEMA issued a letter to DPW ("8/6/13 Letter"), and explained it rejected the County's argument that apparent NFIP violations were cured because the Settlement Agreement allowed the Residences "to be built back to pre-Iniki conditions, even if they should technically have been 'substantial improvements.'" [Iwamoto Decl., Exh. 16 (8/6/13 Letter) at 4.] Thus, DPW was at least aware of the Settlement Agreement when it received the 8/6/13 Letter. Plaintiffs contend the County acted in accordance with the Settlement Agreement by issuing and renewing their TVR Certificates, until their application sent on June 14, 2016. [K. Burmeister Decl. at ¶ 25.] The County does not dispute Plaintiffs' assertion that it first repudiated the Settlement Agreement during this litigation.

The County is not entitlement to summary judgment on Count I on the basis the Settlement Agreement is void or unenforceable. In light of this ruling, the Court need not address Plaintiffs' argument that the County is equitably estopped from strategically changing its position and arguing the Settlement Agreement is unenforceable.

## II.  **Count II - Breach of the Implied Covenant of Good Faith and Fair Dealing**

In their memorandum in opposition, Plaintiffs clarify that Count II does not allege the tort of bad faith.  Plaintiffs contend Count II rests in assumpsit, not tort, and argue the County's liability on Count II arises from, *inter alia*, its bad faith issuance of the Enforcement Notices, its failure to explain to FEMA how the Settlement Agreement satisfied NFIP requirements, and its repudiation of the Settlement Agreement following the commencement of this litigation.

The Hawai`i Supreme Court has recognized the tort of bad faith in the insurance context because bad faith failure to pay claims, in addition to breaching a contract, "damages the very protection or security which the insured sought to gain by buying insurance"; therefore, "the tort of bad faith is . . . a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract."  Enoka v. AIG Hawaii Ins. Co., Inc., 109 Hawai`i 537, 549, 128 P.3d 850, 862 (2006) (citations and internal quotation marks omitted).  Plaintiffs have not presented any evidence the County committed a wrongful act apart from its alleged breach of contract.  Therefore, to the extent Count II alleges the tort of bad faith, the Court finds there are no genuine issues of material fact, and the County is entitled to summary judgment.

Moreover, this Court has stated:

> Hawai'i "contract law allows — and at times even
> encourages — intentional breaches of contract."
> <u>Francis v. Lee Enters., Inc.</u>, 89 Hawai'i 234, 243,
> 971 P.2d 707, 716 (1999) (citing R. Posner,
> Economic Analysis of Law § 3.8 (1972)). This
> "amoral view" favors "'efficient' breaches of
> contract, *i.e.*, breaches where the gain to the
> breaching party exceeds the loss to the party
> suffering the breach." <u>Id.</u> "[B]reaching a
> contract constitutes a morally neutral act. . . .
> [T]he duty to keep a contract at common law means
> a prediction that you must pay damages if you do
> not keep it—and nothing else." <u>Id.</u> (internal
> citation and quotation marks omitted).

<u>Barranco v. 3D Sys. Corp.</u>, CIVIL NO. 13-00412 LEK-RLP, 2018 WL
1599270, at *22 (D. Hawai'i Mar. 30, 2018) (alterations in
<u>Barranco</u>). Plaintiffs may not maintain a separate cause of
action to assert the County's moral wrongness or fault for
breaching their contract. <u>See</u> <u>id.</u> There are no genuine issues
of material fact as to Count II, and the County is entitled to
summary judgment.

## III. <u>Count III - Trespass</u>

This Court has stated:

> One is subject to liability to another for
> trespass, irrespective of whether he thereby
> causes harm to any legally protected interest of
> the other, if he intentionally: (a) enters land in
> the possession of the other, or . . . (b) remains
> on the land. . . ." Restatement (Second) of Torts
> § 158 (1965); <u>see also</u> <u>Memminger v. Summit at
> Kaneohe Bay Ass'n</u>, 129 Hawai'i 426, No. 30383,
> 2013 WL 2149732, at *3 (Hawai'i. Ct. App. May 17,
> 2013) (discussing Restatement (Second) of Torts §
> 158 cmt. f).

<u>Lowther v. U.S. Bank N.A.</u>, 971 F. Supp. 2d 989, 1016 (D. Hawai`i 2013).  Further, a claim for trespass is subject to a two-year statute of limitations.  <u>Id.</u> (some citations omitted) (citing Haw. Rev. Stat. § 657-7).  Because Plaintiffs filed their Complaint on July 25, 2016, any incidents occurring before July 25, 2014, are time-barred.

Ulrike Burmeister states that, in September 2008, she saw Planning inspector Les Milnes enter the Property and asked him to respect her privacy, leave, and never enter without permission; despite this request, other unauthorized entries occurred in 2008 and 2010.  [Pltfs.' CSOF, Decl. of Ulrike Burmeister ("U. Burmeister Decl.") at ¶¶ 5-6.]  Further, Ulrike Burmeister states that, on May 11, 2016, "Deputy Planning Director Ka`aina Hull entered the Property without [her] consent[, and] disturbed at least two of [her] guests."  [<u>Id.</u> at ¶ 7.]  Plaintiffs state that they have documented fourteen instances in which a County representative has trespassed on the Property.  [K. Burmeister Decl. at ¶ 38.]

The County argues it is entitled to summary judgment because Plaintiffs fail to show the County's alleged trespass caused damage.  This Court disagrees.  Whether the County "cause[d] harm to any legally protected interest" by its trespass may be relevant to damages, but is not an element of liability for trespass.  <u>See</u> <u>Lowther</u>, 971 F. Supp. 2d at 1016.  Moreover,

23

the United States Supreme Court has stated "the common law of trespass furthers a range of interests," which include privacy, protection of property, and others; "[i]n any event, unlicensed use of property by others is presumptively unjustified." Oliver v. United States, 466 U.S. 170, 184 n.15 (1984).

The Motion is denied as to the portion of Count III based on the May 11, 2016 incident. Ulrike Burmeister's testimony about that incident creates a genuine issue of material fact as to whether entry occurred; and her testimony about that and prior incidents creates a genuine issue of material fact as to whether the unauthorized entry occurred intentionally, knowingly, and wilfully.

The Motion is granted as to the portions of Count III based on incidents other than the May 11, 2016 incident. Plaintiffs cite no other evidence of trespass within the two-year statute of limitations. Although Plaintiffs state they have documented fourteen incidents, they fail to provide evidence necessary to create a genuine issue of material fact.

## IV. **Count IV - Nuisance**

Plaintiffs contend the Enforcement Notices constitute a private nuisance, and cite Western Sunview Properties LLC v. Federman, in which this district court stated, "A private nuisance has been defined as 'a nontrespassory invasion of another's interest in the private use and enjoyment of his

24

land.'" 338 F. Supp. 2d 1106, 1116 (D. Hawai`i 2004) (citation omitted) (quoting Restatement (Second) of Torts, § 821D (1979)). There, the plaintiffs alleged construction on the defendants' property unreasonably obstructed their view plane. Id. Plaintiffs' circumstances are nothing like Western Sunview. Plaintiffs complain of harm from the Enforcement Notices, not any incompatible neighboring property use. Count IV is thus outside the scope of a traditional nuisance action. See Green v. Fred Weber, Inc., 254 S.W.3d 874, 881 (Mo. 2008) ("The law of nuisance recognizes two conflicting rights: property owners have a right to control their land and use it to benefit their best interests; the public and neighboring land owners have a right to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land.").

Plaintiffs seek to expand the law of nuisance to encompass wrongful zoning and building code enforcement. This Court cannot oblige: "absent a statute or valid ordinance declaring [wrongful zoning enforcement] in violation of general concepts of public policy to be a nuisance or subject to abatement, equity courts generally are without jurisdiction to enjoin such activities." See Marsland v. Pang, 5 Haw. App. 463, 478, 701 P.2d 175, 188 (1985) (citation omitted). Moreover, this Court cannot "declar[e by its] mere repetition or continuance" that wrongful zoning enforcement constitutes a "nuisance where

25

the legislature has not seen fit" to grant such authority.  <u>See</u>
<u>id.</u> (citation and internal quotation marks omitted).  There being
no genuine dispute of material fact, the County is entitled to
summary judgment on Count IV.

**V.    Count V - Harassment**

In relevant part, "harassment" means "[a]n intentional
or knowing course of conduct directed at an individual that
seriously alarms or disturbs consistently or continually bothers
the individual and serves no legitimate purpose."  Haw. Rev.
Stat. § 604-10.5(a)(2).  Plaintiffs adduce no evidence showing
the Enforcement Notices were pretextual or served no legitimate
purpose.  Plaintiffs simply argue the Enforcement Notices were
illegitimate because they were based "on the faulty premise that
Residence 4 is not a legally nonconforming structure, and that
the Notices were not in violation of the Agreement."  [Mem. in
Opp. at 29 (emphases omitted).]  Such contentions, even if true,
flatly fail to support a claim for harassment.  There being no
genuine dispute of material fact, the County is entitled to
summary judgment on Count V.

**VI.   Count VI - Equal Protection**

"To succeed on a 'class of one' [equal protection]
claim, [a plaintiff] must demonstrate [state action which]:
(1) intentionally (2) treated [the plaintiff] differently than
other[s] similarly situated property owners, (3) without a

26

rational basis"; but a plaintiff "need not show [the government representatives] were motived by subjective ill will." <u>Gerhart v. Lake Cty., Mont.</u>, 637 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted). "A class-of-one plaintiff must show that the discriminatory treatment was intentionally directed at him, as opposed . . . to being an accident or a random act." <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

The County argues it is entitled to summary judgment because it did not treat Plaintiffs differently than owners of the other twenty one properties FEMA identified as apparent NFIP violations during its 2009 North Shore floodplain tour. Further, the County argues it "was compelled to take action by FEMA, and did so reasonably." [Mem. in Supp. of Motion at 30.]

Plaintiffs argue the other twenty one properties are not appropriate comparators because the Settlement Agreement establishes Residence #4 as a legally nonconforming structure. Plaintiffs point out that, in a February 22, 2010 letter to FEMA ("2/22/10 Letter"), DPW identified one of the twenty one properties as grandfathered under the flood ordinance. [Pltfs.' CSOF, McAneeley Decl., Exh. 22 (2/22/10 Letter) at 5.] By contrast, DPW flagged Plaintiffs' Property for investigation and enforcement. [<u>Id.</u> at 8.] Plaintiffs argue the County should have "simply explain[ed] to FEMA the history of Residence 4," and

suggest it did not because of later regret it did not negotiate a different bargain.  [Mem. in Opp. at 32-33.]

Plaintiffs fail to establish their prima facie case that they were intentionally treated differently from other similar homeowners.  Plaintiffs ignore that the County did tell FEMA about the Settlement Agreement, but FEMA rejected the claim it allowed the residences "to be built back to pre-Iniki conditions, even if they should technically have been 'substantial improvements.'"  [8/6/13 Letter at 4.]  This is fatal to Plaintiffs' equal protection theory.  Plaintiffs point to certain Kaua`i County Councilmembers' opposition to the Settlement Agreement and argue it shows the County used FEMA as a pretext.[7]  The problem for Plaintiffs is that they must show conduct that is intentional, not merely negligent.

Plaintiffs argue that, instead of issuing the Enforcement Notices, the County should have instead provided FEMA the facts and argument which ultimately proved persuasive in the 9/23/16 Letter.  Even assuming that the County's failure to do so amounts to discrimination, finding intentional discrimination requires an improbable exercise in speculation built atop

_____

[7] On November 25, 2008, certain Kaua`i County Councilmembers, on behalf of the County Council's Planning Committee, issued a memo to the Kaua`i County Planning Commission, which expressed their concerns that the Settlement Agreement was both unlawful and unwise.  [K. Burmeister Decl., Exh. 26.]

speculation.  Thus, to the extent Plaintiffs argue that
Councilmembers' opposition to the Settlement Agreement, voiced in
2008, creates a genuine dispute of material fact as to whether
the County then intentionally provided FEMA an argument likely to
be rejected and withheld the more persuasive arguments later
stated in the 9/23/16 Letter, for the purpose of using FEMA's
conclusion that apparent NFIP violations were not resolved, such
as in the 8/6/13 Letter, as a pretext for issuing the July 2015
NOAV and later Enforcement Notices, in order to achieve
Councilmembers' goal of repudiating the Settlement Agreement,
this speculation is insufficient to create a genuine dispute of
material fact sufficient to defeat summary judgment on Count VI.

Plaintiffs are correct insofar as they argue the County
was not compelled to take action by FEMA because the NFIP is
voluntary.  See Nat'l Wildlife Fed'n, 345 F. Supp. 2d at 1156.
In the context of Plaintiffs' equal protection claim, this is a
distinction without a difference.  To defeat summary judgment,
Plaintiffs must establish a genuine dispute of material fact as
to whether the County had a rational basis for treating
Plaintiffs differently, not whether the County was compelled to
treat Plaintiffs differently.  See Gerhart, 637 F.3d at 1023.
The County's interest in entering the CRS, a voluntary program
which would result in substantial savings to Kaua`i homeowners on
their flood insurance premiums, provided a rational basis for

treating Plaintiffs' differently.  Thus, even if Plaintiffs had

shown a genuine dispute of material fact as to whether they were

treated differently, the County would still be entitled to

summary judgment on Count VI.

## VII. <u>Count VII - Tortious Interference With Contract</u>

The elements of tortious interference with

contractual/advantageous relationship ("TICR") are:

> (1) a contract between the plaintiff and a third
> party; (2) the defendant's knowledge of the
> contract; (3) the defendant's intentional
> inducement of the third party to breach the
> contract; (4) the absence of justification on the
> defendant's part; (5) the subsequent breach of the
> contract by the third party; and (6) damages to
> the plaintiff.

<u>Lee v. Aiu</u>, 85 Hawai`i 19, 32, 936 P.2d 655, 668 (1997).

Plaintiffs cite no evidence the County intentionally induced, or

actually caused, a third party to breach its contract with

Plaintiffs.  Plaintiffs point to the two guests disturbed by the

alleged trespass incident on May 11, 2016, and speculate this

incident caused those two guests not to return.  Plaintiffs

provide no evidence indicating:  who these guests are; whether

the guests had a contract to come back; whether the guests

subsequently breached that contract; or whether that breach was

intentionally induced by the County.  There being no genuine

dispute of material fact, the County is entitled to summary

judgment on Count VII.

## VIII.  Count VIII - Tortious Interference With Prospective Economic Advantage

The Hawai`i Supreme Court has stated:

> The elements of the tort of intentional interference with prospective business advantage are:  (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Minton v. Quintal, 131 Hawai`i 167, 191, 317 P.3d 1, 25 (2013).

Plaintiffs do not contend the County's conduct caused them to cancel any guest reservations or decline any inquiries from prospective guests.  Rather, Plaintiffs argue they bring Count VIII because they have suffered mental anguish and stress, non-economic damages under Hawai`i law, and rely on Haw. Rev. Stat. § 663-8.5.  Even assuming Plaintiffs can demonstrate actual damages, they fail to adduce any evidence as to the fourth element, "legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy."  See id.  There being no genuine dispute of material fact, the County is entitled to summary judgment on Count VIII.

## IX.  **Count IX - Prima Facie Tort**

This Court has stated it predicts

> that the Hawai`i Supreme Court would only
> recognize a prima facie tort claim in cases with
> **facts** that are virtually identical to <u>Giuliani [v.
> Chuck</u>, 1 Haw. App. 379, 620 P.2d 733 (1980)].  <u>See</u>
> <u>Metzler [Contracting Co. LLC v. Stephens</u>, Civil
> No. 07-00261 LEK], 2009 WL 1046666, at *5 [D.
> Hawai`i Apr. 17, 2009].  <u>In Giuliani</u>, the
> plaintiffs entered into an agreement to purchase
> residential property from the defendant.  They did
> not complete the sale because of disputes
> regarding the sale documents, and the defendant's
> attorney deemed the plaintiffs' deposit forfeited,
> alleging that the plaintiffs breached the
> agreement.  The plaintiffs filed suit to rescind
> the contract and to obtain the return of their
> deposit.  <u>Giuliani</u>, 1 Haw. App. at 381, 620 P.2d
> at 735.  The [Intermediate Court of Appeals of
> Hawai`i ("ICA")] held that "the amended complaint
> [was] sufficient to state a cause of action for
> intentional harm to a property interest, a
> cognizable cause of action sounding in tort," but
> it was insufficient to allege any other cause of
> action.  <u>Id.</u> at 386, 620 P.3d at 738 (citing
> Restatement, Second, Torts § 871).

<u>DeRosa v. Ass'n of Apartment Owners of the Golf Villas</u>, 185 F.

Supp. 3d 1247, 1252–53 (D. Hawai`i 2016) (emphasis in original).

Plaintiffs argue this case is like <u>Giuliani</u> and rely on

<u>Yoneji v. Yoneji</u>, in which the ICA described <u>Giuliani</u> as a case

where the defendant caused the plaintiff to "needlessly enter

into litigation to defend their property and rights which, in

turn, caused [them] mental anguish as well as deprivation of

enjoyment over a long period of time."  <u>Yoneji v. Yoneji</u>, 136

Hawai`i 11, 20, 354 P.3d 1160, 1169 (Ct. App. 2015) (citation

omitted).  Plaintiffs ignore that, in <u>Yoneji</u>, the ICA "h[eld] that <u>Giuliani</u> did not create a broad prima facie tort cause of action . . . .  Instead, [<u>Giuliani</u>] recognized a cause of action [limited] to cases that are factually similar to <u>Giuliani</u> and where no other well-recognized causes of action are pled to address the alleged harm."  <u>Id.</u>

This Court again states that, in <u>Giuliani</u>, the ICA "'did not recognize prima facie tort as an alternative to another well-recognized cause of action.'"  <u>DeRosa</u>, 185 F. Supp. 3d at 1252 (quoting <u>Metzler</u>, 2009 WL 1046666, at *5).  Even assuming Plaintiffs needlessly entered into litigation and suffered mental anguish, this allegation is insufficient to state a claim for prima facie tort.  <u>See</u> <u>id.</u>  There being no genuine dispute of material fact, the County is entitled to summary judgment on Count IX.

**X.   <u>Counts X and XI - Declaratory and Injunctive Relief</u>**

This Court has stated:

> It is well-settled that declaratory relief and injunctive relief "are remedies and not independent causes of actions."  <u>See, e.g.</u>, <u>Wagner v. Aurora Loan Servicing</u>, Civil No. 10-00729 LEK-BMK, 2011 WL 6819041, at *6 (D. Hawai`i Dec. 27, 2011) (some citations omitted) (citing <u>Caniadido v. MortgageIT</u>, Civil No. 11-00078 JMS/BMK, 2011 WL 3837265, at *5-6 (D. Hawai`i Aug. 26, 2011) (citing <u>Ballard v. Chase Bank USA, NA</u>, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'"); <u>Jensen v. Quality Loan Serv. Corp.</u>, 702 F. Supp. 2d 1183,

1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.")))).

Billete v. Deutsche Bank Nat'l Tr. Co., Civil No. 13-00061 LEK-KSC, 2013 WL 2367834, at *7 (D. Hawai`i May 29, 2013). Counts X and XI state claims for relief, and neither states an independent cause of action. See id. There being no genuine dispute of material fact, the County is entitled to summary judgment on Counts X and XI.

## CONCLUSION

On the basis of the foregoing, County of Kauai's Motion for Summary Judgment on All Counts, filed October 3, 2017, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is DENIED insofar as the County is not entitled to summary judgment on Count I, Plaintiffs' claim for breach of contract, and on the portion of Count III, Plaintiffs' claim for trespass, based solely on the May 11, 2016 incident. The Motion is GRANTED insofar as the County is entitled to summary judgment on Counts II and IV-XI in their entirety, and to the portion of Count III not based on the May 11, 2016 incident.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 2, 2018.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

__KLAUS H. BURMEISTER, ET AL. VS. COUNTY OF KAUA`I__; CIVIL 16-00402
LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS