IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KLAUS H. BURMEISTER AND ULRIKE BURMEISTER, AS TRUSTEES OF THE BURMEISTER FAMILY TRUST DATED JANUARY 21, 1994, | ) ) ) ) ) ) | CIVIL 16-00402 LEK-KJM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| COUNTY OF KAUA`I, and DOES 1-50, | ) ) ) | |
| Defendants, | ) ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, X, AND XI**

On November 1, 2017, Plaintiffs Klaus H. Burmeister and Ulrike Burmeister, as Trustees of the Burmeister Family Trust Dated January 21, 1994 (collectively "Plaintiffs") filed their Motion for Partial Summary Judgment on Counts I, II, X, and XI ("Motion"). [Dkt. no. 42.] Defendant County of Kaua`i ("Defendant" or the "County") filed its memorandum in opposition on March 23, 2018, and Plaintiffs filed their reply on April 2, 2018. [Dkt. nos. 82, 84.] This matter came on for hearing on April 16, 2018. Plaintiffs' Motion is hereby denied for the reasons set forth below.

**BACKGROUND**

This action arises out of Plaintiffs' ownership of real property on the island of Kaua`i and the four residences on that

property ("Property").  Plaintiffs originally asserted eleven
claims, including breach of contract ("Count I") and trespass to
land ("Count III") in their Complaint, filed on July 25, 2016.
[Dkt. no. 1.]  In its Order Granting In Part and Denying In Part
Defendant's Motion For Summary Judgment On All Counts, filed on
May 2, 2018 ("5/2/18 Order"), this Court granted summary judgment
in favor of the County on all counts, except Count I and a
portion of Count III.  [Dkt. no. 87.[1]]  Therefore, the Motion is
denied as moot insofar as it seeks summary judgment on Counts II,
X, and XI, and the Motion is construed as seeking partial summary
judgment only as to Count I.

In a nutshell, Plaintiffs' Count I claim arises out of
the Enforcement and Settlement Agreement ("Settlement
Agreement"), which the parties executed on January 7, 2008
("Effective Date").[2]  While the parties agree the Settlement
Agreement covers certain issues arising under the County's
Comprehensive Zoning Ordinance ("CZO"), Plaintiffs contend the

---

[1] The 5/2/18 Order is also available at 2018 WL 2050131.

[2] The parties' filings and exhibits variously refer to the Property as containing four "residences," "structures," "buildings," and "cottages."  This Order follows the Settlement Agreement, which uses the term "residences."  [Pltfs.' Separate & Concise Statement of Facts in Supp. of Motion ("Pltfs.' CSOF"), Decl. of Klaus H. Burmeister ("K. Burmeister Decl."), Exh. 1 (Settlement Agreement); Def.'s Separate & Concise Statement of Facts in Supp. of Motion ("Def.'s CSOF"), filed 3/23/18 (dkt. no. 82), Decl. of Les Milnes ("Milnes Decl."), Exh. 10 (Settlement Agreement).]

2

County breached this agreement when it undertook zoning and building enforcement actions after the Effective Date.[3]  The County, however, argues these actions were related to flood zone compliance, which is outside the scope of the Settlement Agreement.  In addition, at the hearing on the Motion, the County argued that, although the flood zone violations at issue were known at the of the Settlement Agreement, these violations were not discussed in negotiations and reiterated that flood zone compliance is outside the scope of the Settlement Agreement.

      The parties are familiar with the facts which are set forth in the Court's prior order and therefore it will not repeat those facts here, except as relevant to the instant Motion.  See 5/2/18 Order, 2018 WL 2050131.

      In 2002, Plaintiffs purchased the Property and operated the four residences as transient vacation rentals ("TVRs"). [Pltfs.' CSOF at ¶ 7; Def.'s CSOF at ¶ 7.]  On June 24, 2004, the County Planning Department ("Planning") issued a Zoning Compliance Notice ("June 2004 ZCN"), and cited Plaintiffs under the CZO for unpermitted construction and alteration of the residences.  [Milnes Decl., Exh. 5 at 1-2.]  Disputes ensued between the parties.  After more than three years, the parties executed the Settlement Agreement.  [Pltfs.' CSOF at ¶ 16; Def.'s

---

[3] The CZO and the flood ordinance are located in Chapters 8 and 15, respectively, of the Kaua`i County Code.  The Kaua`i County Code is available at https://qcode.us/codes/kauaicounty/

3

CSOF at ¶ 16.]  Pertinent to the issues at hand, the Settlement Agreement's terms provide that:

-"Zoning permits and Special Management Area permits shall be issued" for the residences and the fence, "and the same shall thereafter be deemed in full compliance with County zoning requirements"; [Settlement Agreement at ¶ 2;]

-"Residence #4 shall be permitted to remain in its present location until the crest of the active beach berm fronting Residence #4 reaches any portion of Residence #4, at which time Residence #4 shall at the Owners' expense be removed . . . . Until [such time, Residence #4] shall not be enlarged or reconfigured"; [id. at ¶ 3;]

-Under various scenarios in which some of the residences are destroyed, the parties agree as to how many residences may be rebuilt; [id. at ¶ 4;]

-A sideyard setback issue pertaining to the laundry building is resolved; [id. at ¶ 5;]

-"Except as otherwise set forth herein, the Owners shall not be required to obtain any other permits from the County for all existing structures and improvements"; [id. at ¶ 6;]

-"Compliance with the foregoing requirements . . . shall cure any and all outstanding building or zoning violations at this time as to any and all structures currently existing on [the Property]"; [id. at ¶ 7].

On February 15, 2008, a month after the Settlement Agreement's Effective Date, Planning issued a Special Management Area ("SMA") permit to Plaintiffs, which recognized Residence #4 as a nonconforming use.  [Pltfs.' CSOF at ¶¶ 26-27; Def.'s CSOF at ¶¶ 26-27.]  On March 19, 2008, the County Department of Public Works ("DPW") denied Plaintiffs' building permit application #06-783 for Residence #4 due to violation of flood zone requirements.  [Def.'s CSOF, Decl. of Stanford Iwamoto ("Iwamoto

4

Decl."), Exh. 17 at 3.] In 2009, after an inspection, Planning issued TVR certificates for all four residences. [Pltfs.' CSOF at ¶ 28; Def.'s CSOF at ¶ 28.]

On September 30, 2010, DPW issued Plaintiffs a Notice of Apparent Violation ("NOAV" and specifically "September 2010 NOAV") because Residence #4 is not "elevated above the base flood elevation." [K. Burmeister Decl., Exh. 5 at 1.] Plaintiffs contested the citation based on the Settlement Agreement. [Pltfs.' CSOF at ¶ 30; Def.'s CSOF at ¶ 30.] On July 10, 2015, DPW issued Plaintiffs a NOAV ("July 2015 NOAV") for violation of flood zone requirements. [K. Burmeister Decl., Exh. 6.] Specifically, DPW cited Residence #4 for failure to obtain a building permit and an occupancy certificate required in special flood hazard areas. [Id. at 1.]

On June 14, 2016, Plaintiffs applied to Planning for renewal of Residence #4's TVR certificate ("TVR Renewal Application"). [Pltfs.' CSOF at ¶ 28; Def.'s CSOF at ¶ 28.] On June 21, 2016, Planning issued Plaintiffs a Notice of Violation ("June 2016 NOV"), and demanded they "complete the building permit process or remove" Residence #4. [K. Burmeister Decl., Exh. 7 at 2.] On July 18, 2016, Planning withheld approval of the TVR Renewal Application based on the June 2016 NOV, and demanded Plaintiffs cease and desist using Residence #4 as a TVR. [Pltfs.' CSOF, Decl. of Counsel ("McAneeley Decl."), Exh. 14.]

On July 27, 2016, Planning rescinded the June 2016 NOV, and refused to approve the TVR Renewal Application because Plaintiffs had not resolved the July 2015 NOAV. [McAneeley Decl., Exh. 15 at 1-2.]

The County's enforcement actions were motivated, at least in part, because the Federal Emergency Management Agency ("FEMA") identified violations of National Flood Insurance Program ("NFIP") regulations at the Property. Resolving NFIP violations would enable Kaua`i to gain acceptance into the Community Rating System ("CRS") and obtain preferential rates for flood insurance premiums. [Pltfs.' CSOF at ¶¶ 39-40; Def.'s CSOF at ¶¶ 39-40 (admitting Pltfs.' ¶¶ 39-40 in pertinent part, and adding that the County acted to prevent disqualification from NFIP and to enforce compliance with the law).]

On September 23, 2016, DPW issued a letter to FEMA ("9/23/16 Letter"), stating the County Attorney had concluded the Settlement Agreement functions as a deed restriction running with the land, and resolves the apparent NFIP violation at the Property. [McAneeley Decl., Exh. 18 at 2.] DPW requested FEMA determine whether it agrees the Settlement Agreement "fulfill[s] the intent and purpose of the [NFIP] by ensuring compliance with NFIP standards to the 'maximum extent possible.'" [Id.] On October 7, 2016, FEMA agreed. [McAneeley Decl., Exh. 19.] On October 13, 2016, the County rescinded the July 2015 NOAV.

[Iwamoto Decl., Exh. 27.]  Also on October 13, 2016, the County granted the TVR Renewal Application.  [Milnes Decl., Exh. 16.]

**STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  This district court has stated:

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller [v. Glenn Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th Cir. 2006)].
>
> When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This

7

> means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").
>
> On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted). Put another way, in determining whether there is a genuine issue of material fact, a court must view the record in the light most favorable to the non-moving parties. Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013).

## DISCUSSION

I.  **Equitable and Judicial Estoppel**

Plaintiffs argue the County should be estopped from arguing the Settlement Agreement does not cover flood zone violations. Plaintiffs contend equitable estoppel applies

8

because, in its 9/23/16 Letter to FEMA, the County relied on the Settlement Agreement to obtain the benefit of resolving an NFIP violation.  Plaintiffs are mistaken.  They conflate two things – their argument that flood zone violations are covered by the terms of the Settlement Agreement and thus released by the County with the County's submission of the Settlement Agreement to FEMA seeking the latter's approval that the actions taken satisfy NFIP standards.  These are two different contexts in which the Settlement Agreement's terms were considered.

At any rate, equitable estoppel is inapplicable to the 9/23/16 Letter.  "[I]n order to invoke [equitable] estoppel against the government, 'one must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped and that such reliance was reasonable.'"  Turner v. Chandler, 87 Hawai`i 330, 333-34, 955 P.2d 1062, 1065-66 (Ct. App. 1998) (emphasis and citation omitted) (quoting Doherty v. Hartford Ins. Group, 58 Haw. 570, 573, 574 P.2d 132, 134–35 (1978)).  Plaintiffs were not sent, nor did they reasonably and detrimentally rely upon the 9/23/16 Letter.  Equitable estoppel therefore does not apply.

Plaintiffs argue judicial estoppel is appropriate because the County has strategically changed its position in this litigation.  The County had argued its "presumption in 2008 that Building #4 was exempt from compliance with flood zone

9

requirements was . . . a mistake, rendering the 2008 Agreement voidable as to Building #4." [Mem. in Supp. of Motion for Summary Judgment on All Counts, filed 10/3/17 (dkt. no. 37-1), at 16-17.] The County no longer asserts mutual mistake. [Mem. in Opp. at 20.] Plaintiffs argue the County's prior position is an admission that the Settlement Agreement, if enforceable, covers Residence #4's noncompliance with flood zone requirements.

> The Hawai`i Supreme Court has stated:
>
> the doctrine of judicial estoppel does not apply unless the changed argument **prejudices** the opposing party. . . . [The doctrine of judicial estoppel does not preclude] inconsistent claims or defenses within a single action, but . . . [precludes] subsequently repudiating a theory of action that has been **accepted and acted upon by the court** or that has otherwise detrimentally affected the opposing party.

Roxas v. Marcos, 89 Hawai`i 91, 124 n.19, 969 P.2d 1209, 1242 n.19 (1998) (emphases in Roxas) (internal citations, quotations marks, and brackets omitted). Judicial estoppel does not apply because the County's prior argument was not accepted and acted upon by the Court. See 5/2/18 Order, 2018 WL 2050131, at *8 (denying the County's motion for summary judgment as to Count I).

## II. Breach of Contract

The crux of the parties' dispute is whether the Settlement Agreement covers flood zone violations. The 5/2/18 Order ruled the scope of the Settlement Agreement is ambiguous:

> Under the Settlement Agreement, Plaintiffs are granted some relief from having to "obtain any

10

> other permits from the County," but which
> "permits" and "outstanding issues" the parties
> intended the Settlement Agreement to reach cannot
> be determined from within its four corners.
> Resort to parol evidence is therefore appropriate
> to determine the construction the parties
> intended.

Id. at *4 (internal citation omitted) (citing Settlement Agreement at ¶¶ 6-7).] Resolving the ambiguity as to the scope of the Settlement Agreement depends on "the parties' intent, which is a question of fact." See Wittig v. Allianz, A.G., 112 Hawai`i 195, 201–02, 145 P.3d 738, 744–45 (Ct. App. 2006) (citation omitted) (citing Found. Int'l, Inc. v. E.T. Ige Construction, Inc., 102 Hawai`i 487, 497, 78 P.3d 23, 33 (2003)). As the moving party, Plaintiffs must show there is no genuine dispute the parties intended the Settlement Agreement to cover the flood zone violations at issue.

Plaintiffs argue the Settlement Agreement unambiguously covers flood zone violations. Plaintiffs present one argument not considered in the 5/2/18 Order: because flood zone violations are building code violations, any construction excluding flood zone violations erroneously rejects as surplusage the word "building" in Paragraph 7. See Settlement Agreement at ¶ 7 (stating the agreement cures "all outstanding **building** or zoning violations at this time as to any and all structures" (emphasis added)). This Court has recognized that, "[u]nder Hawai`i law, courts interpreting a contract should, to the extent

possible, give every term of a contract effect." Baqui v. Burlington Ins. Co., Civil No. 10-00774 LEK-BMK, 2011 WL 1254084, at *8 (D. Hawai`i Mar. 31, 2011) (citing Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai`i 286, 297-98, 141 P.3d 459, 470-71 (2006)).  The rule against surplusage offers no support.  The word "building" is given effect insofar as the Settlement Agreement addresses certain building violations, as well as certain zoning violations.  At the same time, as recognized in the 5/2/18 Order, the Settlement Agreement is ambiguous as to which violations were "outstanding" and therefore within the ambit of the agreement.  2018 WL 2050131, at *4.

At the hearing on the Motion, Plaintiffs asserted DPW and Planning knew of Residence #4's noncompliance with the flood ordinance prior to the execution of the Settlement Agreement.  In support, Plaintiffs sought to rely on exhibits attached to their reply memorandum.  Those exhibits fail to comply with the Local Rules and were not considered.  See LR56.1(h) ("[a]ffidavits or declarations setting forth facts and/or authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement.  Supplemental affidavits and declarations may only be submitted with leave of court.").

Plaintiffs contend the parties contemplated addressing flood zone violations as part of the Settlement Agreement.  In support, Plaintiffs point to the June 2004 ZCN.  The June 2004

12

ZCN details certain violations under the CZO, and concludes by advising of the interests of other agencies:

> Also, the Department of Public Works, Engineering has specific flood plain management requirements that will need to be addressed should any of the structures be within the VE flood zone.
>
> Please be advised that the State Department of Health have [sic] specific wastewater management requirements that will have to be addressed with regard to the kitchens and full baths that exist within the illegal Dwelling Units.

[June 2004 ZCN at 3.]

Plaintiffs additionally rely on <u>Pancakes of Hawaii, Inc. v. Pomare Properties Corp.</u> and argue the parties must have intended the Settlement Agreement to cure flood zone violations under the rule of reasonable construction. <u>See</u> 85 Hawai`i 286, 296 n.6, 944 P.2d 83, 93 n.6 (Ct. App. 1997). In support, Plaintiffs point to their promise under the Settlement Agreement not to enlarge or reconfigure Residence #4 because flood zone compliance would require elevating Residence #4 above the base flood elevation, such change would necessarily require Plaintiffs to renege on their obligation not to reconfigure. Further, Plaintiffs contend their expectation that the Settlement Agreement allows Residence #4 to remain in its present location is nullified if the agreement's scope is construed to allow DPW to demand its removal.

The County asserts, however, the parties did not contemplate that the Settlement Agreement would encompass flood zone violations. Ian Costa states that, in negotiations, the parties discussed the resolution of CZO violations, but never addressed resolving flood zone violations. [Def.'s CSOF, Decl. of Ian Costa ("Costa Decl.") at ¶¶ 4-5.[4]] County records show DPW began its review of Residence #4 on February 26, 2008, and asserted a flood zone violation on March 19, 2008. Both actions took place after the Settlement Agreement was executed (and not before). [Iwamoto Decl., Exh. 17 at 1.] Nor does the current record show DPW issuing citations for any flood zone violation before the parties executed the Settlement Agreement on January 7, 2008.

Viewing the record in the light most favorable to the County, there is a genuine dispute of fact as to whether the parties contemplated settling flood zone violations as part of the Settlement Agreement. The June 2004 ZCN does not show the parties were aware of any particular flood zone violations. As pertinent to the intention of the parties, Plaintiffs' reasons to prefer a settlement also covering flood zone violations supports the claim Plaintiffs raised the issue in negotiations. However, the County's evidence creates a genuine dispute as to whether the

---

[4] During the relevant times, Mr. Costa was the Director of Planning and was personally involved in negotiating the Settlement Agreement. [Costa Decl. at ¶¶ 1,3.]

parties discussed or contemplated settling flood zone violations as part of the Settlement Agreement.

In light of this ruling, Plaintiffs' reliance on Pancakes and the rule of reasonable construction is inapposite. See 85 Hawai`i at 296 n.6, 944 P.2d at 93 n.6. Under the rule of reasonable construction, when a contract is "susceptible of two constructions . . . the interpretation [that] makes it a rational and probable agreement must be preferred" over an interpretation that "makes it inequitable, unusual or such as reasonable men [or women] would not be likely to enter into." Id. (alterations in Pancakes) (citation and internal quotation marks omitted). Construing a contract based on speculation that the parties would have intended a broader scope, if they had contemplated the issue, would be inconsistent with the "principal objective" of contract construction, which is "to ascertain and effectuate the intention of the parties." See Brown v. KFC Nat'l Mgmt. Co., 82 Hawai`i 226, 240, 921 P.2d 146, 160 (1996); see also Restatement (Second) of Contracts § 203 cmt. c (1981) ("[p]arties are free to make agreements which seem unreasonable to others . . . . The search is for the manifested intention of the parties.").

Because there is a genuine dispute as to whether or not the parties contemplated settling flood zone violations, there is a genuine dispute as to the parties intent in the Settlement Agreement. Thus, whether the County's flood zone enforcement

15

actions breached the Settlement Agreement depends on disputed issues of material fact.  Plaintiffs are not entitled to judgment as a matter of law on Count I.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for Partial Summary Judgment on Counts I, II, X, and XI, filed November 1, 2017, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 25, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KLAUS H. BURMEISTER, ET AL. VS. COUNTY OF KAUA`I; CIVIL 16-00402 LEK-KJM; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, X AND XI**